UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| United States of America,<br>    Plaintiff | :<br>: |
| | :    Case No. 3:11-cv-1612 (VLB) |
| v. | : |
| | :    August 22, 2012 |
| $10,160.00 in United States Currency,<br>    Defendant<br>[Claimant: Felix Jose Ortiz] | :<br>:<br>: |

### RULING GRANTING THE GOVERNMENT'S MOTION TO STRIKE AND DENYING CLAIMANT'S MOTION TO DISMISS

Before the Court is the motion of the Claimant to $10,160.00 in United States Currency's Motion to Dismiss asserting that the Motion for Extension of Time was not timely filed.  On March 19, 2012, the Government responded to the motion in which they argue that the Claimant lacks statutory standing for failure to comply with the pleading requirements of Rule G(5)(b) of the Supplemental Rules of Admiralty or Maritime Claims and Asset Forfeiture Actions.  That same day, the Government also filed a Motion to Strike Answer to Complaint to which the Claimant has not responded.  In that motion, the Government moves to strike Claimant's Answer in its entirety for lack of standing.

The general rules regarding the timing for filing a civil forfeiture action are governed by 18 U.S.C. §983(a)(3)(A).  They provide:

> Not later than 90 days after a claim has been filed, the Government shall file a complaint for forfeiture in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims or return the property pending the filing of a complaint, except that a court in the district in which the complaint will be filed may extend the period for filing a complaint for good cause shown or upon agreement of the parties.

Forfeiture Actions in Rem are governed by the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Rule G(5)(b) proscribes the process for answering to a forfeiture claim:

> A claimant must serve and file and answer to the complaint or a motion under Rule 12 [of the Federal Rules of Civil Procedure] within 21 days after filing the claim. A claimant waives an objection to in rem jurisdiction or to venue if the objection is not made by motion or stated in the answer.

For the reasons stated below, the Court first finds that the Claimant lacks standing due to the untimely filing of his answer. Even if the Claimant had standing, the Court denies the Claimant's Motion to Dismiss.

**Relevant Facts**

On July 19, 2011, the Government commenced the instant action by filing a Motion for Extension of Time in which it asserted that additional time was needed to file the forfeiture claim because it required further information from the Drug Enforcement Administration ("DEA"). Magistrate Judge Margolis granted this motion on July 27, 2011 asserting that good cause was shown sufficient for granting the motion for extension of time. On September 20, 2011, the Government filed a second motion for extension of time citing the same justification. On September 21, 2011, Judge Margolis granted that motion. On September 23, 2011, the Claimant filed an objection to the Government's second motion asserting that the Government has failed to show good cause. This Order extended the filing deadline to October 19, 2011.

On October 19, 2012, the Government filed the Verified Complaint of Forfeiture for $10,160.00.  A warrant was issued pursuant to that Complaint on November 2, 2011 and on November 15, the warrant was returned executed.  The Verified Claim of an ownership interest in the seized assets was entered on December 9, 2011.

On February 27, 2012, the Claimant entered his answer to the Complaint with Special Defenses and a Motion to Dismiss.  In the first filing, the Claimant denies that the currency was "seized from" him, that the Court has *in rem* jurisdiction, and the Government's statement of the facts and circumstances surrounding the seizure of the subject currency.  Claimant's Motion to Dismiss argues that he is entitled to dismissal because the Government relied on illegally obtained evidence and because the forfeiture action was not filed in a timely manner.

On March 19, 2012, the Government Objected to the Motion to Dismiss and subsequently filed a Motion to Strike.  In their Objection, the Government asserts 1) that the Claimant does not have standing because the objection was untimely and 2) the Motion to Dismiss is not the proper way to challenge an alleged Fourth Amendment violation.  In the Motion to Strike the Answer, the Government moves for Claimant's entire answer to be stricken for failure to comply with the pleading requirements of Supplemental Rule G(5)(b).

**Claimant Lacks Standing**

3

As a preliminary matter, the Court addresses the Government's Motion to Strike Answer for failure to comply with the pleading requirement.  The Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions Rule(G)(5)(B) provide:

> A claimant must serve and file an answer to the complaint or a motion under Rule 12 [of the Federal Rules of Civil Procedure' within 21 days after filing the claim.  A claimant waives an objection to in rem jurisdiction or to venue if the objection is not made by motion or stated in the answer.

On October 19, 2011, the Government filed the complaint.  On February 27, 2012, the claimant filed its answer to the complaint.  In the Motion to Dismiss, the Claimant attaches as an Exhibit the Notice of Forfeiture Action.  That notice is dated March 23, 2011.

The Claimant makes no argument regarding the 135 day period between the filing of the complaint and his answer.  Furthermore, the Claimant did not file a motion to extend the answer deadline.  Although the Notes to the Rule state that a claimant may raise an omitted objection by amending the answer, the Notes do not state that untimeliness of the answer will be cured by such amendment.  The Court does note that the Claimant objects to *in rem* jurisdiction in his answer.  However, given the untimeliness, the court concludes that the claimant does lack standing to challenge the forfeiture action because he is deemed to have waived his objection.  The proper remedy for a claim or answer that does not comply with the pleading requirements is to strike the filing.  Therefore, pursuant to Rule G(8)(c)(i)(A), the Government's motion is GRANTED.

Nevertheless, the Court will address the issues raised in the Claimant's Motion to Dismiss.

**Good Cause Existed to Grant the Government's Motions for Extension of Time**

Pursuant to 18 U.S.C. §983(a)(3)(A), the Court has discretion to grant a motion for extension of time where good cause is shown by the Government. "[E]xcept that a court in the district in which the complaint will be filed may extend the period for filing a complaint for good cause shown or upon agreement of the parties." This Court affirms the Magistrate's two decisions to extend the time for the government to file the complaint. This Court finds that the Government did assert good cause because it did require additional time to obtain the necessary information from the DEA. The complaint contains detailed information regarding law enforcement's surveillance, investigation and arrest of the Claimant. This information was not within the Assistant United States Attorney's personal knowledge. Rather, it came from the DEA and the New Britain Police Department.

Next, the Court turns to review of the Magistrate's decision to grant the Government additional time. "An order is clearly erroneous if 'on the entire evidence,' the [district court] is 'left with the definite and firm conviction that a mistake has been committed.'" *Flaherty v. Filardi,* No. 03 Civ. 2167, 2009 WL 749570, at *19 (S.D.N.Y. March 20, 2009) (citing *Easley v. Cromartie,* 532 U.S. 234, 243 (2001). This standard is "highly deferential [, and] . . . magistrate judges are afforded broad discretion in resolving non-dispositive disputes and reversal is

appropriate only if there discretion is abused." *Derthick v. Bassett–Walker, Inc.,* No. 90 Civ. 5427, 1992 WL 249951, at *8 (S.D.N.Y. Sept. 23 1992).

Based on the various motions brought before the Court at this time, it cannot be said with firm conviction that the Magistrate Judge clearly erred in granting the two motions to extend the filing deadline. The Government had asserted good cause to grant both motions was that it was awaiting additional information from the DEA regarding the property at the center of the forfeiture proceedings. The Court finds no evidence presented by the Claimant that a mistake has been committed.

While the Second Circuit has not specifically defined "good cause" in the forfeiture context, it has stated that the primary consideration in determining whether good cause has been shown is whether the moving party can demonstrate diligence. *Kassner v. 2nd Avenue Delicatessen Inc.,* 496 F.3d 229, 244 (2d Cir. 2007). Congress debated the meaning of the term while crafting the Civil Asset Forfeiture Reform Act (CAFRA). The "good cause" language that was ultimately codified into 18 U.S.C. § 983(a)(3)(A) was derived from situations in which the filing of the complaint within the 90 day deadline might interfere with an ongoing criminal investigation, or endanger witnesses or undercover operations. 1997 House Committee Report, *Legislative History: Civil Asset Forfeiture Reform Act (CAFRA) of 2000,* published by the U.S. Department of justice (May 2000) at 251. However, "an extension should not be granted merely to allow the government additional time to conduct its investigation." *Id*.

Good cause has been described as "necessity or justification," where "denial would unduly prejudice the preparation of petitioner's case," or "cause hardship or injustice." *Hickman v. Taylor,* 393 U.S. 495, 509-10 (1947).

> At a minimum, good cause requires a showing by the moving party of an objectively sufficient reason for extending a deadline such that the deadlines cannot reasonably be met despite the diligence of the party needing the extension. The inquiry focuses on the moving party's reason for requesting the extension.

*Odom v. Matteo*, 772 F.Spp.24 377, 405 (D. Conn. 2011) (internal citations omitted).

The forfeiture claim came about as a result of a drug investigation involving the Claimant. The property in question was seized by the DEA. Not allowing the Government time to obtain additional information from the DEA could have interfered with an ongoing criminal investigation related to the immediate forfeiture matter, a situation specifically contemplated by Congress when it passed CAFRA. *See above*. Based on the motions before the Court, it is not clear that the motions to extend were simply put forward as an improper attempt to buy the Government to delay the proceeding. Furthermore, the Claimant makes no such factually based allegations in his Motion to Dismiss.

"An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Thompson v. Keane,* No. 95 Civ. 2442, 996 WL 229887, at *1 (S.D.N.Y. May 6, 1996) (internal quotations omitted). The Magistrate Judge was required by law to grant the Government's motion to extend upon finding good cause. Based on the materials available at this time on this issue, it appears as though the Magistrate Judge used the "good cause"

7

standard to reach their decision. Moreover, as discussed above, there is nothing in these materials that would indicate this decision was clearly erroneous, which supports the conclusion that the Magistrate Judge properly applied relevant statutes, case law, and rules of procedure properly.

The Court finds that the extensions granted were warranted because the DEA likely could not provide the information necessary for filing the civil forfeiture action and such information was not within the Assistant United States Attorney's personal knowledge.  Consequently, it cannot be said that granting the motions to extend constitute clear error on the part of the Magistrate Judge. Because the Magistrate Judge had the advantage of being directly presented with the relevant facts supporting the motions to extend of which this Court is not privy, this Court defers to that decision and finds that that the orders entered on July 27, 2011 and September 21, 2011 were not clearly erroneous. Furthermore, the Claimant makes no argument supportive of a conclusion that the Magistrate Judge did not properly apply the relevant law.  Therefore, the Court concludes that the decisions were not contrary to law.

**The Seizure Did Not Violate Claimant's Fourth Amendment Rights**

As a preliminary matter, Rule G(8)(a) provides that a motion to suppress does not affect a forfeiture action.  The rule reads:

> If the defendant property was seized, a party with standing to contest the lawfulness of the seizure may move to suppress use of the property as evidence.  Suppression does not affect forfeiture of the property based on independently derived evidence.

Therefore, the suppression of evidence in the criminal context does not necessarily bear on the authority to seize property in the civil forfeiture context. Nevertheless, the Claimant makes such argument so the Court will address the legality of his identification and subsequent seizure of his currency.

The constitutionality of an automobile stop is governed by the Fourth Amendment. Only an unreasonable "seizure" is outlawed by this provision. A seizure of the person that amounts to a full-blown arrest requires probable cause in order to be reasonable. But, suspicious activity not rising to the level of probable cause does not require a police officer "to simply shrug his shoulders and allow a crime to occur or a criminal to escape." *Adams v. Williams*, 407 U.S. 143, 145-46 (1972).

An officer may attempt to prevent or detect criminal activity by means of a less intrusive seizure that consists of briefly stopping an individual, and, if necessary, performing a frisk or pat-down for weapons, provided the officer can justify the stop and frisk based on "reasonable suspicion." *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *see also United States v. Hensley*, 469 U.S. 221, 226 (1985). In determining whether such a limited seizure is reasonable, a court should balance "the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." *Brown v. Texas*, 443 U.S.. 47, 51 (1979). Reasonable suspicion is more than simply a hunch about possible criminality, but facts combined with inferences meaningful to trained law enforcement personnel may form a proper basis for reasonable suspicion. *See United States v. Sokolow*, 490 U.S. 1, 7

(1989); *United States v. Cortez*, 449 U.S. 411, 419 (1981); *United States v. Bayless*, 201 F.3d 116, 134 (2d Cir. 2000); *Terry*, 392 U.S. at 30.

Apart from direct police observations, reasonable suspicion may be based on a bulletin from another police department as well as sufficiently corroborated tips from informants. Under the "collective knowledge doctrine," an officer making a *Terry* stop may rely on information transmitted from other law enforcement officials. *See Whitley v. Warden*, 560 U.S. 568 (1971); *see also Calamia v. City of New York*, 879 F.2d 1025, 1032 (2d Cir. 1989)(police lawfully stopped and arrested suspect based on written instructions from prosecutor whose office had investigated the case). But if it is later determined that the officer transmitting to other officers an order to stop a suspect did so "in the absence of a reasonable suspicion, then a stop and the objective reliance upon it violates the Fourth Amendment." *Hensley*, 469 U.S. at 323 (*Terry* stop based on police flyer indicating suspect was wanted in investigation was legal if "officers who issued the flyer possessed probable cause to make the arrest"); *see also United States v. Canieso*, 470 F.2d 1224, 1230 (2d Cir. 1972). Reasonable suspicion as to one person sometimes may authorize an investigatory detention of another person. *See United States v. Patrick*, 899 F.2d 169, 172 (2d Cir. 1990); *see also United States v. Barlin*, 686 F.2d 81, 87 (2d Cir. 1982)(when individuals as to whom reasonable suspicion existed entered narcotics location, the court found it permissible to stop the unknown individual who entered with them).

Where the detention of a person constitutes a seizure, and that seizure is supported by reasonable suspicion, the next issue to consider is whether the

police conduct falls within the permissible bounds of an investigatory detention. *See Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177 (2004)(asking name of suspect and criminalizing the failure to respond, where "reasonably related to the circumstances justifying the stop," did not violate the Fourth Amendment). *Terry* requires that such detentions must be "reasonably related in scope to the justification for their initiation." *Terry*, 392 U.S. at 29. A *Terry* stop that exceeds those bounds becomes an arrest that, to remain legal, must be supported by probable cause. *See United States v. Sharpe*, 470 U.S. 675, 685 (1985). On the other hand, even a *Terry* stop that remains squarely within the bounds of reasonableness for Fourth Amendment purposes will not necessarily prevent courts within the Second Circuit from concluding that the defendant was "in custody" for Fifth Amendment Purposes. *See United States v. Newton*, 369 F.3d 659, 673 (2d Cir. 2004) (Second Circuit "has specifically rejected Fourth Amendment reasonableness as the standard for resolving *Miranda* custody challenges").

Law enforcement officers, suspecting that serious criminal activity was afoot, have stopped vehicles for traffic infractions, such as failing to signal before changing lanes, in order to uncover incriminating evidence. Despite arguments that the stop is merely a pretext, the Supreme Court has "been unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers." *Whren v. United States*, 517 U.S. 806, 813 (1996)(upholding the stop). Nevertheless, "suspicionless, unrelated questioning that may

11

minimally prolong a traffic stop" has been upheld outside the second Circuit. *United States v. Everett*, 601 F.3d 484, 492 (6th Cir. 2010).

In this case, the Claimant argues that there is no connection between the criminal activity and the forfeited currency. He further argues that there was no reasonable and articulable suspicion justifying the automobile stop and that the seizure of the Claimant and consequently the subject currency was a fruit of the poisonous tree and conducted in violation of his Fourth Amendment rights. Because there was no showing that the automobile stop was proper, the Claimant argues that his Motion to Dismiss should be granted. The Government responds that a Motion to Dismiss is not the proper method for challenging the fruits of the automobile stop. Rather, the Government argues that the Claimant should have filed a motion to suppress.

The Court finds that the automobile stop was justified. There was a collective knowledge existing between the New Britain Police Department and the DEA agents who detained the vehicle parked at the Turtle Creek Lane lot in East Hartford. There are no assertions by the Claimant that the information transmitted to the DEA agents was without reasonable suspicion. Therefore, the stop and objective reliance on that information was not in violation of the Claimant's Fourth Amendment Rights. The Narrative (Def. Ex. 1) then goes on to state that Officer Rodriguez next asked the driver to roll down the window because he could not identify the passengers. This conduct was reasonable under the circumstances. When the driver complied, the officer "immediately smelled a strong odor of marijuana coming from inside the car." The Claimant's

exhibit does not contain the remainder of the Officer's report.  However, on this fact alone, the Court finds sufficient evidence that this stop and subsequent identification of the claimant passenger in the car are squarely within the bounds of a valid *Terry* stop.

The Court notes, in accord with Rule G(8)(a), that this finding of a lawful stop has no bearing on the Government's authority to seize the subject currency in the instant action.  Accordingly, the Court finds that suppression of the evidence would have no bearing here.  Furthermore, the proper method to challenge the seizure of the assets would have been for the Claimant to timely file his objection according to the procedure of Rule G(5)(b).  The Court defers to the decision of the Magistrate to extend the time for the Government to initiate this action and finds that the Complaint was filed timely by the Government.

For the foregoing reasons, the Claimant's Motion to Dismiss is DENIED.  The Government's Motion to Strike is GRANTED.

                                              IT IS SO ORDERED.

                                              _____/s/_____
                                              Vanessa L. Bryant
                                              United States District Judge

Dated at Hartford, Connecticut:  August 22, 2012.